James BRADY, Plaintiff,

v.

WAL–MART STORES, INC., Defendant.

No. Civ.A. 3:97–CV–361WS.

United States District Court, S.D. Mississippi, Jackson Division.

Sept. 14, 1998.

Jim D. Waide, III, Waide, Chandler & Fleitas, P.A., Tupelo, MS, for James Brady, plaintiff.

William O. Luckett, Jr., Nathan J. McMullen, Luckett Law Firm, Clarksdale, MS, for Wal–Mart Stores, Inc., defendant.

1. Fed.R.Civ.P. 56(b) provides that "[a] party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof."

## MEMORANDUM OPINION AND ORDER

WINGATE, District Judge.

Before the court is the defendant's motion for summary judgment filed pursuant to Rules 56(b) and (c), Federal Rules of Civil Procedure.[1] Defendant here is Wal–Mart Stores, Inc., (Wal–Mart). The plaintiff is James Brady, a former employee of Wal–Mart. Plaintiff filed this civil action against the defendant alleging violations of the Americans With Disabilities Act of 1990(ADA), Title 42 U.S.C. §§ 12111, *et seq.;* the Employee Retirement Income Security Act of 1974 (ERISA), Title 29 U.S.C. §§ 1001, *et seq.;* and breach of contract under Mississippi law. Plaintiff has now abandoned his claim under ERISA. By its motion, Wal–Mart argues that plaintiff's remaining two claims should also be dismissed. Relying upon *Celotex Corporation v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), and its progeny, defendant contends that both the facts and the law governing plaintiff's ADA and breach of contract claims support a grant of summary judgment in favor of the defendant. Although the plaintiff opposes the motion, this court is persuaded to grant defendant's motion for summary judgment for the reasons which follow.

### Facts

James Brady began his employment with defendant in 1988 as a truck driver. He claims he began suffering health problems relating to degenerative disc disease in 1992 and began seeing a series of doctors to receive evaluation and treatment of this back condition. While undergoing evaluation for this back condition, plaintiff was diagnosed as suffering from carpal tunnel syndrome in both hands. In No-

Fed.R.Civ.P. 56(c) provides in pertinent part that "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

vember, 1995, and January, 1996, plaintiff underwent successful surgery on each hand for his carpal tunnel syndrome. In June of 1996, plaintiff again consulted physicians about his back. He was diagnosed with a back condition related to the lowest disc in the spine pressing against a nerve which had grown on the disc. Thereafter, in June 1996, plaintiff was placed on leave from commercial truck driving. Between June 1996 and September 1996, plaintiff was provided physical therapy and prescription medication.

Sometime about August 24, 1996, some anonymous person sent a letter to Wal–Mart suggesting that plaintiff was committing Workers Compensation fraud by working for pay for a construction company while out on medical leave. Defendant commenced an investigation, which included secret surveillance and monitoring by an investigator. This surreptitious investigation occurred between August 26, 1996, and September 4, 1996. Defendant's investigator video-taped plaintiff lifting, pulling, carrying, throwing and dragging pieces of wood while helping to load a truck with scrap wood pieces at a job site of the employer, Southern Traditional Homes of Jackson, Mississippi. According to defendant, the video-tape shows plaintiff performing normal head and neck movement, walking, and swinging both arms for an hour. The defendant's investigator opined that plaintiff was employed at the time by Southern Traditional Homes.

Defendant forwarded the video-tape of plaintiff to plaintiff's physician. On September 12, 1996, the physician contacted plaintiff and released him to return to work September 16, 1996. Plaintiff contacted defendant and was advised to return to work on that date. On September 16, 1996, plaintiff returned to work and

once there was immediately fired. Defendant informed the plaintiff that its investigator had made a video-tape of him while he had been at the Southern Traditional Homes work site. Wal–Mart discharged plaintiff for the following violations of company policy: dishonesty; compromised integrity; fraud; and working for another employer while on medical leave and drawing Workers Compensation and long-term disability benefits.

As earlier stated, plaintiff's complaint alleges that defendant violated his rights under the ADA and that defendant breached its contract with plaintiff under Mississippi law. Accordingly, this court has jurisdiction over plaintiff's ADA claim by virtue of Title 28 U.S.C. § 1331 [2] and jurisdiction over his state law claim under Title 28 U.S.C. § 1367.[3]

### Summary Judgment Standard

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Hirras v. National R.R. Passenger Corp.*, 95 F.3d 396, 399 (5th Cir.1996) (quoting Fed. R.Civ.P. 56(c)). The party seeking summary judgment carries the burden of demonstrating that there is no evidence to support the non-movant's case. *Hirras,* 95 F.3d at 399. In ruling on a motion for summary judgment, the court is not to make credibility determinations, weigh evidence, or draw from the facts legitimate inferences for the movant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Rather, "it is the province of the jury to access the probative value of the evi-

---

**2.** Title 28 U.S.C. § 1331 provides that, "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

**3.** Title 28 U.S.C. § 1367 provides in pertinent part that, "in any civil action of which the district courts have original jurisdiction, the

district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."

dence." *Kennett–Murray Corp. v. Bone,* 622 F.2d 887, 892 (5th Cir.1980). "Summary judgment can be granted only if everything in the record demonstrates that no genuine issues of material facts exist." *Id.* It is improper where the court merely believes it is unlikely that the non-moving party will prevail at trial. *National Screen Serv. Corp. v. Poster Exchange, Inc.,* 305 F.2d 647, 651 (5th Cir.1962).

### Americans With Disabilities Act Claim

The ADA prohibits discrimination against qualified individuals with disabilities, on account of such disabilities, in regard to applying, hiring, advancement, firing, compensation, training, and other terms, conditions, and privileges of employment. Title 42 U.S.C. § 12112(a); *Daigle v. Liberty Life Ins. Co.,* 70 F.3d 394, 396 (5th Cir.1995). Under the ADA, discrimination includes "utilizing standards, criteria or methods of administration that have the effect of discrimination on the basis of disability ..." Title 42 U.S.C. § 12112(b)(3)(A). Plaintiff may prove discrimination either by direct evidence or by the indirect method of proving discrimination set out in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

■ To state a prima facie case under the ADA, a plaintiff must prove that: (1) he suffers from a "disability"; (2) he is a "qualified individual"; and (3) he suffered an adverse employment action because of his disability. *Chandler v. City of Dallas,* 2 F.3d 1385, 1390 (5th Cir.1993); *Rakestraw v. Carpenter Company,* 898 F.Supp. 386, 389 (N.D.Miss.1995); *Stradley v. Lafourche Communications,* 869 F.Supp. 442, 443 (E.D.La.1994).

In order to establish "disability," plaintiff must show that: (1) he suffers from a physical or mental impairment that substantially limits one or more of his major life activities; (2) that he has a record of such impairment; or (3) that he was regarded as having such an impairment. *de la Torres v. Bolger,* 781 F.2d 1134, 1136–37

(5th Cir.1986); *Gaston v. Jack Post Corp.,* 971 F.Supp. 1084, 1087 (N.D.Miss.1997); *Rakestraw v. Carpenter Company,* 898 F.Supp. 386, 389 (N.D.Miss.1995) (citing Title 42 U.S.C. § 12102(2)). Plaintiff here seeks recovery only under the first prong of the ADA and concedes any claim based on the record of a disability or being regarded as disabled. (Plaintiff's Memorandum in Opposition to Motion for Summary Judgment, p. 8, fn. 4).

Accordingly, plaintiff here must establish that he suffers from an impairment that substantially limits one or more of his major life activities. Major life activities have been defined as "caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *Still v. Freeport–McMoran, Inc.,* 120 F.3d 50, 52 (1997).

In an action for violation of the ADA, in order to survive a motion for summary judgment which attacks his obligation to show a prima facie case, plaintiff must evidence a genuine issue of material fact on each of the elements of his prima facie case. *Rosamond v. Pennaco Hosiery, Inc.,* 942 F.Supp. 279, 283 (N.D.Miss.1996).

Plaintiff limits his claim under the ADA to his alleged back impairment, conceding that his carpal tunnel syndrome does not rise to the level of a disability under the ADA. (Plaintiff's Memorandum in Opposition to Motion for Summary Judgment, p. 2 fn. 1). Nevertheless, defendant argues that plaintiff's alleged back impairment also does not implicate the ADA and its protection.

In his Memorandum in Opposition to Motion for Summary Judgment, plaintiff alleges that the major life activities affected by his back condition are sleeping and sitting. In his deposition, he says that he cannot sit for any significant length of time and that he is substantially restricted in his ability to sleep. According to plaintiff, since the end of 1994, he has had problems with waking several times during the night due to pain in his arms.

Plaintiff has produced no evidence to show that he was unable to obtain enough sleep to be able to perform his normal day activities. To the contrary, plaintiff continued his job with no other problems than alleged loss of sleep, as a long-haul trucker for Wal–Mart, until June of 1996 when he was restricted from commercial driving. This job restriction had nothing to do with plaintiff's alleged lack of sleep. When one can perform the normal activities of daily living, despite an alleged impairment, then the person is not substantially limited in that major life activity. *Ray v. Glidden Company*, 85 F.3d 227, 229 (5th Cir.1996); *Dutcher v. Ingalls Shipbuilding*, 53 F.3d 723, 726 (5th Cir.1995).

The other major life activity which plaintiff claims is substantially limited due to his back condition is sitting. Plaintiff attempts to differentiate the major life activity of sitting from the major life activity of working; however, virtually every reference to his problem with sitting relates to his being in a driver's seat for long periods in the course of his employment with Wal–Mart. Plaintiff claims that by June of 1996, the pain caused by his back problem prevented him from driving his tractor-trailer for extended periods of time. Plaintiff was restricted from work from May 28, 1996, through September 12, 1996. This restriction from commercial driving by his physician was due to the repetitive motion associated with being in a driver's seat for eighteen hours a day. There is no evidence that plaintiff was unable to engage in the normal activities of daily living, other than truck driving, in June of 1996 due to his alleged problems with sitting. It is undisputed that by August of 1996, plaintiff was able to engage in manual labor despite his alleged back condition and he was released by his doctor to return to work as a truck driver with no restrictions on September 12, 1996. If a person can perform the normal activities of daily living despite his alleged impairment, then the individual is not substantially limited in that major life activity. *Ray v. Glidden Company, supra; Dutcher v. In-*

*galls Shipbuilding, supra.* Since plaintiff was not substantially limited in his normal daily activities, other than truck driving until September 12, 1996, due to his inability to sit for long periods of time, then he is not substantially limited in the major life activity of sitting.

Plaintiff further argues that since his back condition is permanent or long-term, this impairment entitles him to protection under the ADA. The real issue is not whether the alleged impairment is permanent but whether the alleged impairment constitutes a significant barrier to employment for plaintiff. *Rakestraw v. Carpenter Co., supra.* In this case, plaintiff was released with no restrictions to return to work as a long-haul truck driver prior to his termination. Therefore, plaintiff's condition was not a significant barrier to his employment with Wal–Mart. Further, it is undisputed that, after being discharged by Wal–Mart, plaintiff sought employment as a truck driver with several companies and in October of 1996, plaintiff purchased his own tractor-trailer rig and hired on with Chemical Lehman Company as an owner/operator. Thus, it is clear that plaintiff's back condition did not cause a long-term problem with his ability to work.

### Discrimination

In addition to proving a disability, plaintiff, in order to prevail on his ADA claim, must prove that he is a qualified individual and that he suffered an adverse employment action because of his disability. *Chandler v. City of Dallas, supra.* Wal–Mart has articulated a legitimate, non-discriminatory basis for terminating plaintiff. Wal–Mart had information which convinced it that plaintiff was working for another employer while on Wal–Mart's medical leave of absence and receiving Workers Compensation benefits and long-term disability in violation of company policy. Plaintiff's obligation at this stage of the proceedings is to make a prima facie showing that Wal–Mart's decision to terminate him was motivated by

discriminatory animus. Plaintiff's speculation and belief are insufficient to make this prima facie showing. Further, plaintiff's bald conclusions are also insufficient. *EEOC v. Exxon Shipping Company,* 745 F.2d 967, 976 (5th Cir.1984). Here, after receipt of an anonymous letter, defendant undertook to investigate plaintiff's activities. The investigation resulted in a video-tape showing plaintiff performing normally and without apparent medical problems. After seeing this video-tape, plaintiff's physician returned plaintiff to work and defendant discharged plaintiff. Although plaintiff makes much of defendant's inability to show that plaintiff was actually employed by Southern Traditional Homes, plaintiff fails to appreciate that the issue here is whether Wal–Mart actually believed that plaintiff was acting dishonestly, fraudulently, and/or working for another employer while on medical leave and drawing benefits. If Wal–Mart was motivated by a sincere belief that·plaintiff's conduct was such and if Wal–Mart's discharge of plaintiff was unaccompanied by discriminatory animus on account of any ADA disability suffered by plaintiff, then Wal–Mart would not be liable under the ADA. *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981); *Bodenheimer v. PPG Industries, Inc.,* 5 F.3d 955, 959 (5th Cir. 1993). Other than speculation, plaintiff has not come forward with any competent evidence to show that Wal–Mart was motivated by a discriminatory reason or that Wal–Mart's stated reason is unworthy of credence. *Burdine,* 101 S.Ct. at 1095. Plaintiff wishes the court wholly to ignore the destructive impact of the video-tape, that it shows an apparently healthy plaintiff performing arduous physical tasks when, supposedly, his back condition precluded him from working as a truck driver. Plaintiff has submitted no argument why an employer, greeted with such facts, should not reasonably conclude that plaintiff's reliance on a back condition to obtain a medical leave and benefits was dishonest and fraudulent.

Therefore, this court finds relative to plaintiff's ADA claim that summary judgment is appropriate. Plaintiff, under the standard of *Celotex Corporation v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), has not shown a disability recognized by the ADA, nor has plaintiff come forth with competent proof at this prima facie stage to show that defendant acted with discriminatory animus.

### *Wrongful Termination*

Plaintiff brings his second claim, wrongful termination, under the state law of Mississippi. Accordingly, this court applies the law of the State of Mississippi to this claim. *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

Plaintiff claims first that Wal–Mart's employee handbook creates an employment contract and that this handbook provides a detailed disciplinary framework fundamentally at odds with the notion of an at-will employment. Further, argues plaintiff, the handbook establishes a disciplinary scheme which would allow the defendant to fire plaintiff only for cause. Plaintiff next argues that under this "for cause" scheme, defendant did not have the requisite proof to discharge plaintiff.

Defendant responds that plaintiff's employment was one terminable-at-will, that the employee handbook did not create an employment contract. Defendant says that plaintiff expressly acknowledged the at-will nature of his employment with Wal–Mart and the fact that the handbook is not a contract.

Under Mississippi law, unless specifically contracted for or implied through personnel policies or procedures, employment is terminable-at-will. *Harrison County School Board v. Morreale,* 538 So.2d 1196, 1200 (Miss.1989). The "terminable at-will" doctrine allows an employer to discharge an employee for good reason, bad reason or no reason at all. *Rosen v. Gulf Shores, Inc.,* 610 So.2d 366, 368

(Miss.1992), citing *Perry v. Sears, Roebuck & Co.,* 508 So.2d 1086, 1088 (Miss.1987); *Shaw v. Burchfield,* 481 So.2d 247, 253–54 (Miss.1985) (other citations omitted). The lone exceptions to this doctrine are found in the cases of *McArn v. Allied Bruce–Terminix Co., Inc.,* 626 So.2d 603 (Miss. 1993), and *Laws v. Aetna Finance Co., ITT,* 667 F.Supp. 342 (N.D.Miss.1987). In *McArn,* the Mississippi Supreme Court stated:

> We are of the opinion that there should be in at least two circumstances, a narrow public policy exception to the employment at will doctrine and this should be so whether there is a written contract or not: (1) an employee who refuses to participate in an illegal act as in Laws shall not be barred by the common law rule of employment at will from bringing an action in tort for damages against his employer; (2) an employee who is discharged for reporting illegal acts of his employer to the employer or anyone else is not barred by the employment at will doctrine from bringing action in tort for damages against his employer.

*McArn,* 626 So.2d at 607; *see also Laws,* 667 F.Supp. at 348 (adopting narrow public policy exception to termination-at-will doctrine where clear mandate of public policy is violated by employee's discharge).

■ Under Mississippi law, a personnel manual disseminated to employees may become a part of the employment contract when the manual provides to the employee a right of employment for any definite length of time or establishes a disciplinary scheme which obligates the employer to follow such provisions. *Bobbitt v. Orchard, Ltd.,* 603 So.2d 356, 361 (Miss.1992).

■ No one here disputes that plaintiff executed an "Acknowledgment" when he received his handbook and that by this Acknowledgment he was specifically informed that the employee handbook did not create any terms or conditions with regard to his employment relationship with Wal–Mart. The Acknowledgment states that the handbook is not a contract.

Therefore, this court is persuaded that under Mississippi law Wal–Mart's employee handbook is not an employment contract, either express or implied. *Dandridge v. Chromcraft Corp.,* 914 F.Supp. 1396, 1405 (N.D.Miss.1996); *McDaniel v. Miss. Baptist Medical Ctr.,* 869 F.Supp. 445, 453 (S.D.Miss.1994), citing *Bobbitt v. Orchard, Ltd.,* 603 So.2d 356, 357 (Miss. 1992).

### Conclusion

For the reasons set forth in this memorandum opinion, the court finds that plaintiff has presented insufficient evidence to withstand summary judgment with regard to both his claim under the ADA and his breach of contract claim.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that the motion 'of the defendant, Wal–Mart Stores, Inc., for summary judgment is hereby granted. The court will enter a separate judgment in accordance with the Local Rules.